IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF: | NO. 10-13553 |
| GEORGE JOSEPH PORTER, JR. | |
| ARALEAN H. PORTER | SECTION "A" |
| *Debtors* | CHAPTER 7 |

*************************************************************************

| | |
|---|---|
| HIGHSTEPPIN' PRODUCTIONS, LLC | ADVERSARY NUMBER |
|     PLAINTIFF | 10-1130 A |
| VERSUS | |
| GEORGE JOSEPH PORTER, JR., ET AL | |
|     DEFENDANTS | |

ADMINISTRATIVELY CONSOLIDATED FOR TRIAL WITH

| | |
|---|---|
| HIGHSTEPPIN' PRODUCTIONS, LLC | ADVERSARY NUMBER |
|     PLAINTIFF | 10-1131 A |
| VERSUS | |
| BRIAN HERBERT STOLTZ, ET AL | |
|     DEFENDANTS | |

*************************************************************************

### DEFENDANTS' MOTION TO COMPEL, WITH INCORPORATED MEMORANDUM IN SUPPORT

**NOW INTO COURT,** through undersigned counsel, come Debtors and Adversarial Proceeding Defendants, George Porter, Jr. ("Porter") and David Russell Batiste ("Batiste") (collectively and/or individually "Debtors" or "Defendants[1]"), who hereby file this Motion To Compel ("Motion"), with incorporated Memorandum in Support. Defendants seek a ruling from this Court regarding Adversary Plaintiff, Highsteppin' Productions, LLC ("HSP"), and

---

[1] Debtor/AP Defendant Brian Stoltz ("Stoltz") has also filed a Motion to Compel, regarding the discovery requests he propounded ("Stoltz Discovery"). Because the bulk, if not all, of the Stoltz Discovery seeks information and documents that overlaps with, and is germane to, Porter and Batiste's claims, Defendants herein adopt and incorporate by reference, *in globo* and *in extenso*, the representations and arguments made in Mr. Stoltz' Compel Motion and suppporting Memorandum, to avoid redundancy.

1

individual Adversary Plaintiff, Phillip I. Stepanian's ("Stepanian"), failure to fully and adequately respond to Defendants' previous discovery requests, and failure to provide supplemental productions in keeping with testimony and representations made at HSP and Mr. Stepanian's recent 2-day deposition in Boston on October 10 and 11, 2011. For the reasons set forth below, it is respectfully submitted that the Motion should be granted, in its entirety, and at HSP's sole expense.

## I.   INTRODUCTION AND BACKGROUND

Porter issued three sets of discovery to HSP and/or Stepanian. *Exhibits 1-A (RFAs), 1-B (RFPs), and 1-C (ROGs)* (collectively 1st Set), *Exhibits 2-A (ROGs) and 2-B (RFPs)* (collectively 2nd Set), and *Exhibits 3-A (ROGs) and 3-B (RFPs)* (collectively 3rd Set). Moreover, Porter concurred with, and adopted, the discovery propounded to HSP and Stepanian by co-defendant Stoltz and PBS LLC, but wishes to inform the Court that counsel for Mr. Stoltz and the LLC will address any issues regarding that discovery, in a separate motion. Further, Defendants indicate that each and every response to an RFP, provided by HSP and/or Stepanian, failed to specifically identify any responsive documents, either by Bates number or other specific means of identification. In contrast, HSP/Stepanian's responses simply stated that all responsive documents "have been produced previously or are being produced at this time", which Defendants assert is clearly deficient under FRCP Rules 26, 33, and 34.

## II.   ARGUMENT

### A.   1st SET (RFAs, RFPs and ROGs)

#### 1.   1st RFAs – issued June 9, 2011; answered on July 26, 2011

Porter sought an admission that HSP has received, and continues to receive, monies and royalties on works owned by Porter, without providing an accounting. *Exh. 1-A.* HSP admitted

2

receiving what it called "a nominal amount of a few hundred dollars" and stated that it "will fully account as a credit to Porter for the same." *Exhibit 4* (HSP's answers of 7-26-11). To date, that answer has not been supplemented and the promised "accounting" has yet to be produced. Defendants are entitled to this material; respectfully, production should be compelled. *See FRCP 26(e).*

### 2. 1st RFPs – issued March 4, 2011; answered on July 26, 2011

Porter sought the production of all documents that comprised the universe of HSP's Initial Disclosures, served on August 9, 2010. *Exh. 1-B.* HSP eventually produced in excess of 12,000 pages, *in globo.* Given that Defendants have issued subsequent discovery requests aimed at gleaning some specificity regarding the Initial Disclosures, Defendants do **not** seek to compel anything regarding this particular set of RFPs. *See discussion re 2nd Set, infra.*

### 3. 1st ROGs – issued March 4, 2011; answered on August 26, 2011

Porter sought information regarding how, where and by whom HSP maintained its financial records. *Exh. 1-C.* HSP provided some basic information, but failed to provide the location(s) of its financial records, the type of computer(s) used, and the particulars (name, address, phone number, employer) of all employees, agents, or others who had "any involvement (data input, data selection, data removal, report generation, etc.) in creating, storing, editing, or any other type of involvement [with] HSP's financial records." *Exhibit 5* (HSP's answers of 8-26-11). The requested information in integral to the defense of this case, as well as integral to Defendants' counterclaim. Defendants thus assert they have a valid right to know who was involved in HSP's financial affairs, so that those individuals can be deposed as to HSP's protocols, whatever specific instructions they may have received regarding HSP's financial

record creation, record keeping, record retention and record destruction. Respectfully, more complete answers should be compelled. *See FRCP 26(b)(1)*.

    **B.**     **2nd SET (RFPs and ROGs)**

        **1.**     **2nd ROGs – issued June 9, 2011; answered on July 26, 2011**

Porter issued a second set of ROGs, after receiving HSP's Initial Disclosures (12,085 pages), which sought disclosure of the source(s) of those documents (HSP in-house, Defendants, 3rd party vendors, etc.) (2nd ROG # 1), and whether any of the 12,085 pages were provided to potential witnesses, 3rd parties (2nd ROG # 2), and/or experts (2nd ROG # 3). *Exh. 2-A*. Further, and most importantly, Defendants sought an itemization, by HSP, of its alleged claim, including the identification of each and every "remunerative event" involving Defendants:

> for which HSP is claiming entitlement to compensation, reimbursement, or other financial payment, including date, location, name of venue or studio, the gross amount of remuneration involved per each event, the gross amount of remuneration paid (including remuneration paid directly to the Artists, paid to HSP, paid to HSP on the Artists' behalf, or paid to a 3rd-party(ies) per each event, and the entity or entities that booked the event on behalf of the Artists. This Interrogatory specifically seeks a list of all live performances ("Gigs"), merchandise sales, sound recording sales, studio performances and/or any other event involving the Artists, which generated revenue. [2nd ROG # 4]

and also, with regard to all the "remunerative events" to be elicited in 2nd ROG # 4, a:

> list, by line item, [of] each and every commission(s), expense(s) and/or other form of recoupment, HSP claims it is entitled to recover in this litigation. If the line item is an expense, please identify the person(s) and/or entities to whom the expense was paid, the amount of the expense, the date the expense was incurred, the date the expense was paid, the manner by which the expense was paid, the manner by which HSP secured the Artists' approval for each line-item expense, and the date on which HSP allegedly secured the Artists' approval for each line-item expense. [2nd ROG # 5]

*Id.* 2nd ROG # 4 and 2nd ROG # 5 were designed and intended to gain an understanding of all the remunerative events which occurred during the term of the underlying Personal Management

4

Agreement ("PMA"), and for which HSP/Stepanian claim damages, based on a professed right to compensation, reimbursement, etc.

In response, HSP lodged generic objections of vagueness (without stating how or why the ROGs were vague), overbreadth (again, no specifics), and not being reasonably calculated to lead to the discovery of admissible evidence, and also "direct[ed] the Defendants to the document production pursuant to Fed. R. Civ. Proc. 33(d), regarding 2nd ROG #s 1, 2, 4 and 5. HSP also objected to 2nd ROG # 3 based on an alleged work-product privilege. *Exhibit 6* (HSP's answers of 7-26-11). Defendants maintain that the objections are not well-taken.

Specifically, Defendants maintain that they are entitled to know the source of each and every document produced by HSP. Are these HSP-generated documents, are they from 3rd party vendors, from various parties' agents, from accountants, from publicists, or are they documents previously produced by Defendants and simply regurgitated by HSP/Stepanian? Defendants also assert that HSP's professed reliance on Rule 33(d) is misplaced, regarding 2nd ROGs # 1 and 2, because HSP, and HSP alone, can identify the source of the documents that comprise its Initial Disclosures, and to whom they may have been provided by HSP.

Further, as to 2nd ROGs # 4 and 5, it is HSP's burden, as the Plaintiff, to identify each and every remunerative event to which it claims a right of compensation, reimbursement, etc., as that contention is essentially the crux of this litigation (in addition to issues regarding HSP/Stepanian's competence, experience and proper dispatch of its/his fiduciary duties as manager, or lack thereof). Defendants assert that it defies common-sense for HSP to claim that the "burden of deriving or ascertaining" the scope of HSP's claims against Defendants, is substantially the same for Defendants as it is for HSP, and HSP's answers lack the requisite

"specification . . . in sufficient detail to permit [Defendants] to locate and identify, as readily as [HSP], the documents that allegedly support HSP's claims.

Lastly, as to 2nd ROG # 3, HSP's reliance on the work-product privilege is untenable. Defendants are not seeking privileged information; rather, they seek "the data or other information considered by the witness in forming the opinions", as permitted by Rule 26(a)(2)(B). Defendants also note that HSP has failed to comply with Rule 26(b)(5), by failing to "describe the nature of the documents . . . not produced [so as to] enable [Defendants] to assess the applicability of the privilege or protection." *Id.* Lastly, Plaintiff's response committed to "seasonally supplement . . . when and if necessary." *Exh. 6.* No "seasonal supplementation" has transpired to date. Once again, respectfully, more complete answers should be compelled. *See FRCP Rule 26(a)(2)(B); Rule 26(b)(1) and (5); Rule 33(d).*

## 2. 2nd RFPs – issued June 9, 2011; answered on July 26, 2011

2nd RFPs # 1 and # 2 seek all documents that relate to the information sought in 2nd ROGs # 4 and # 5. HSP again lodged generic objections of vagueness (without stating how or why the ROGs were vague), overbreadth (again, no specifics), and not being reasonably calculated to lead to the discovery of admissible evidence, and also "state[d] that all the documents not subject to [HSP's] objections have been produced previously or are being produced at this time." *Exhibit 7* (HSP's responses of 7-26-11).

2nd RFPs # 3 and # 4 sought all documents related to the line-item expenses, payments and income reflected in the Financial Summary attached by Plaintiff to its Initial Complaint, as well as all documents which "evidence the '1/3 PBS Debt' . . . referred to in the Financial Summary." *Exh. 2-B.* HSP once again provided its stock response: "all the documents not subject to [HSP's] objections have been produced previously or are being produced at this time."

2nd RFPs # 5, 6 and 7 sought all documents that relate to Porter's "approval" of HSP actions taken pursuant to the PMA, Porter's "prior consent" for expenses incurred by HSP (again, as per the PMA), and Porter's E-mail List, again as per the PMA. *Exh. 2-B.* In response, HSP again provided its standard refrain that "all the documents not subject to [HSP's] objections have been produced previously or are being produced at this time." *Exh. 7, responses # 5 and # 6.* With regard to 2nd RFP # 7, HSP claimed, without providing a privilege log, or specific reference to the PMA, that Porter's E-mail List was a "trade secret", was "proprietary information in the possession of and crafted by Highsteppin'" and that "[u]ntil such time as there is an adjudication on the merits, Highsteppin' reserves its contractual rights to withhold this information." *Exh. 7, Response # 7.*

Defendants assert that they are entitled to the production of Porter's own E-mail List (how can it be a trade secret from himself?), at a minimum, because the PMA specifically states that: 1) "Highsteppin' shall provide Artist with a true and complete electronic copy of the then-current Email List for Artist's use, at no cost to Artist;" and that 2) Highsteppin' will not use the Email List in connection with the Artist after the expiration or termination of [the PMA] without Artist's consent. Defendants are clearly entitled to this information, and HSP's objections as unfounded.

2nd RFP # 8 sought an itemization of all property such as CDs, recording masters and duplicates, merchandise, and other items germane to Defendants careers and business. *Exh. 2-B.* HSP offered a variation on its standard theme of objections (ambiguity, vagueness and overbreadth) and then limited its substantive response to a statement that Defendants could inspect and catalogue merchandise at a mutually convenient time. Defendants assert that it is disingenuous to try and require them to incur the expense of traveling to Boston (or wherever

7

else the materials may be located) simply to ascertain what merchandise HSP still has; HSP should provide a full inventory of all property encompassed in this request.

2nd RFPs # 9 and 10 sought all documents that relate to specific averments made by Stepanian in his March 31, 2010 Affidavit (submitted in the Massachusetts proceeding prior to removal). In response, Plaintiff offered its standard objections, sought to re-word the Affidavit by claiming that "the term 'royalties' used in paragraph 89 should more accurately state 'commissions as defined in the [PMA]." *Exh. 7, response # 9.* Further, both responses offered also the standard litany that "all the documents not subject to [HSP's] objections have been produced previously or are being produced at this time." *Id.*.

In sum, Plaintiffs should be compelled to respond as requested herein, and at a minimum, to rectify their abject failure to identify the documentary universe attendant each specific RFP, by Bates number or other reasonable identifier, so that Defendants can reasonably correlate specific documents to specific RFP responses. *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 617-18 (D. Kan. 2005).

    C.    3rd SET (RFPs and ROGs)

        1.    3rd ROGs – issued July 12, 2011; answered on July 26, 2011

Porter issued a third set of ROGs geared towards eliciting information and identifying documents in connection with a previous lawsuit against HSP for copyright infringement, which Defendants assert is directly relevant to their claim of copyright infringement, as well as HSP/Stepanian's prior actions and history. *Exh. 3-A.* HSP responded, admitted that it had been sued by Ethan Backer[2] for copyright infringement, but claimed that it had no "file in the offices

---

[2] Mr. Backer is a photographer who had taken pictures of Defendants' live performance that are believed to have been used by HSP in a manner that resulted in a lawsuit.

8

of HSP which maintains a file. Moreover, other that the complaint and procedural motions, no other material exists." *Exhibit 8* (HSP's answers of 7-26-11).

However, on information and belief, the lawsuit generated e-mail correspondence between HSP, Mr. Backer, and perhaps their respective legal counsel, and involved photographs taken of the Defendants that were used by HSP in a manner that resulted in a lawsuit, which was eventually settled prior to trial. Defendants assert that they are entitled to all non-privileged communications attendant thereto, pleadings, the photos in question, and the settlement agreement, to show a pattern and practice by HSP of using others' proprietary and/or protected intellectual properties without prior permission and/or without properly compensating the right owner(s) of those intellectual properties.

### 2. 3rd RFPs – issued July 12, 2011; answered on July 26, 2011

3rd RFPs # 1 and # 2 seek all documents that relate to the information sought in 3rd ROGs # 1 and # 2. HSP again lodged generic objections of vagueness (without stating how or why the ROGs were vague), overbreadth (again, no specifics), and not being reasonably calculated to lead to the discovery of admissible evidence, and also "state[d] that all the documents not subject to [HSP's] objections have been produced previously or are being produced at this time." *Exhibit 9* (HSP's responses of 7-26-11).

Defendants, on information and belief, assert that there is documentary evidence that relates to this issue, including the pleadings admitted by HSP, correspondence between the parties and their counsel (non-privileged), the actual pictures involved, the settlement agreement, and perhaps other items. Moreover, HSP claims that "all the documents not subject to [HSP's] objections have been produced previously or are being produced at this time," but no such production occurred. Again, at a minimum, Plaintiffs should be compelled to rectify their

9

complete failure to identify the documentary universe attendant to these specific RFPs, by Bates number or other reasonable identifier, so that Defendants can reasonably correlate specific documents to specific RFP responses. *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 617-18 (D. Kan. 2005).

### D. Mr. Stepanian's Recent Deposition Testimony Regarding Supplementation

At his deposition in Boston[3] on October 10 and 11, 2011, Mr. Stepanian, on a number of occasions, professed his belief that documentary support for his testimony existed, including but not limited to: 1) "many e-mails" reviewed for the deposition; 2) "many, many, many" drafts of a merchandise agreement; 3) "countless" examples of documents regarding availability for gigs; 4) evidence of the "many accounts" used by Stepanian for banking; 5) Stepanian's personal, hand-written and electronic notes; 6) documents regarding professed conversations that occurred "all day/every day" regarding advance approval for expenses; 7) documents to support his assertion that he obtained advance approval for publicity expenses "too many times to remember"; 8) documents regarding alleged discussions about an independent business manager; and other such representations.

Astonishingly, despite these emphatic assertions, Stepanian could not specifically identify or reference any of these "many, many" documents, but did represent that he would supplement his discovery responses and production, to provide same. To date, no such supplementation or production has occurred. Respectfully, such supplementation and production should be compelled.

### III. CONCLUSION

---

[3] Counsel just received a partial transcript of those proceedings on Monday, October 24th, but has not had an opportunity to cross reference his notes with the transcript, although ir appears that Mr. Stoltz' counsel has been able, at least partially, to do so. As such, Defendants herein adopt the Stoltz' Compel Motion and Memorandum, and further indicate that the quotations listed in Defendants' pleading are from undersigned's deposition notes.

10

In sum, it is respectfully submitted that HSP should be compelled to provide more specific answers and responses, and to identify, by Bates number, specific documents that correspond to specific requests, for the reasons more fully set forth hereinabove.

>Respectfully Submitted,
>
>____/s/ John O. Pieksen, Jr._____
>John O. Pieksen, Jr. (LA Bar #21023)
>**JOHN PIEKSEN & ASSOCIATES, LLC**
>829 Baronne Street
>New Orleans, LA 70113
>Telephone:   504.581.9322
>Facsimile:    504.324.4844
>jpieksen@cox.net
>**Special Counsel for the Bankruptcy Estate of Debtors Porter, Stoltz, and Batiste, the U.S. Bankruptcy Trustee, Wilbur "Bill" Babin, and counsel for AP Defendants Porter and Batiste**

## LOCAL RULE 7026-1(A) CERTIFICATE

In accordance with Local Bankruptcy Rule 7026-1(a), Fed. R. Civ. P. 37(a)(2)(A) and USDC-EDLA Local Rule 37.1E, undersigned counsel certifies that, through agreement of all counsel, his co-counsel, Mr. Penton, has conferred with opposing counsel for HSP in this matter regarding the matters addressed herein above, but was unable to reach an agreement as to resolution.

>____/s/ John O. Pieksen, Jr._____

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been served upon all counsel of record by ECF filing, facsimile, electronic transmission, and/or by depositing same in the United States mail, properly addressed and postage prepaid, this 24th day of October, 2011.

>____/s/ John O. Pieksen, Jr._____